FILED 10 SEP 24 11:03 USDC-ORE

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

KATHY SLATER,                                                                09-CV-6274-TC

           Plaintiff,

    v.                                                                                        ORDER

DOUGLAS COUNTY, a political subdivision
of the State of Oregon,

           Defendant.

COFFIN, Magistrate Judge:

    In May 2007, the Oregon Legislative Assembly passed the Oregon Family Fairness Act, which is now codified at ORS 106.300. The Act established a domestic partnership system which provides legal recognition to same-sex relationships and which is intended to ensure more equal treatment of gays and lesbians and their families under Oregon law. ORS 106.305 (6).

    Two individuals of the same sex who are at least eighteen, who are otherwise capable, and at least one of whom is an Oregon resident, may register to become domestic partners with the county clerk. ORS 106.310(1); ORS 106.325. They may do so by filing a Declaration of

Page 1 - ORDER

Domestic Partnership with the county clerk. ORS 106.325. The county clerk makes the forms of those declarations available to the public. ORS 106.320(2). The county clerk registers the declaration and returns a Certificate of Registered Domestic Partnership to the registrants. ORS 106.325. The county clerk also collects a fee which is turned over to the state. Registering as domestic partners ensures the partners certain rights, privileges, benefits and immunities. ORS 106.340. The domestic partnership law was intended to go into effect January 1, 2008, but because of a court challenge, did not go into effect until February 4, 2008.

Plaintiff is a former ten-year employee of the County Clerk's Office of defendant Douglas County (County). In December 2007, she asked to be excused from doing any work related to domestic partnership registrations because doing such work would be contrary to her religious belief that homosexuality is a sin. The County offered to help her find another position outside the Clerk's Office, but otherwise denied her request on the basis that such would have caused an undue hardship in the operation of the Clerk's Office. The County terminated plaintiff's employment February 6, 2008, when she confirmed that she would not perform work related to domestic partnership registrations. The County did not replace Ms. Slater after terminating her employment. Five employees remained in the records and archives departments after plaintiff lost her job.

Between the time the domestic partnership law went into effect and December 31, 2009, there were thirty-seven applications for domestic partnership registrations in Douglas County. Twenty-nine were processed in 2008, and eight in 2009. Of the five employees remaining in the Clerk's Office after plaintiff's termination, two processed twenty-six of the registrations during the aforementioned two year period, and the other three registered the remaining eleven. Each

registration involves approximately ten minutes of clerical time.

In the aftermath of her termination, plaintiff has filed this lawsuit in which she contends that the County violated federal and state law by failing to accommodate her religious beliefs and by discharging her because of her religious beliefs. Before the court are cross-motions for summary judgment (#11 and #15). For the reasons that follow, both motions are denied and the matter will be tried to a jury.

## Legal Standard

Federal Rule of Civil Procedure 56 allows the granting of summary judgment:

> if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c). There must be no genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

The movant has the initial burden of establishing that no genuine issue of material fact exists or that a material fact essential to the nonmovant's claim is missing. Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). Once the movant has met its burden, the burden shifts to the nonmovant to produce specific evidence to establish a genuine issue of material fact or to establish the existence of all facts material to the claim. Id.; see also, Bhan v. NME Hosp., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991); Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc., 210 F.3d 1099, 1105 (9th Cir. 2000). In order to meet this burden, the nonmovant "may not rely merely on allegations or denials in its own pleading," but must instead "set out specific facts showing a genuine issue of fact for trial." Fed. R. Civ. P. 56(e).

Material facts which preclude entry of summary judgment are those which, under

applicable substantive law, may affect the outcome of the case. Anderson, 477 U.S. at 248. Factual disputes are genuine if they "properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. On the other hand, if, after the court has drawn all reasonable inferences in favor of the nonmovant, "the evidence is merely colorable, or is not significantly probative," summary judgment may be granted. Id.

## Discussion

The County's Motion for Summary Judgment

The County contends that it is entitled to judgment as a matter of law because it made an effort to accommodate plaintiff by offering to transfer her out of the Clerk's Office into another County position if an opening arose and for the alternative reason that accommodating her request to be relieved of registering domestic partnerships would have caused undue hardship in the operation of the Clerk's Office.

To put the County's motion in perspective, the court will set forth the elements of Title VII religious discrimination cases. To establish a prima facie case of employment discrimination under Title VII, the plaintiff must prove the following:

1. She had a bona fide religious belief, the practice of which conflicts with an employment duty;
2. She informed her employer of the belief and conflict; and
3. The employer discharged her because of her inability to fulfill the job requirement.

Peterson v. Hewlett-Packard Co, 358 F.3d 599, 606 (9th Cir. 2004); Berry v. Department of Social Services, 447 F.3d 642, 655 (9th Cir. 2006). There is no dispute that plaintiff has established a prima facie case. The County concedes that her religious objections to registering domestic partnerships were genuine, that she informed the County of these objections, and that

the County discharged her because she refused to perform this function. The key issues in the case are whether the County made reasonable efforts to accommodate the plaintiff's religious beliefs or whether no reasonable accommodation was possible without creating an undue burden on the County.

Accommodation Efforts

As the court indicated in EEOC v. Hacienda Hotel, 881 F.2d 1504, 1512 (9th Cir. 1989)

> Once the employee has established a prima facie case, the burden shifts to the employer to prove that it made good faith efforts to accommodate the employee's religious beliefs. Anderson V. General Dynamics Convair Aerospace Div., 589 F.2d 397, 401 (9th Cir. 1978), cert. denied, 442 U.S. 921, 99 S.Ct. 2848, 61 L.E.d. 2d 290 (1979); see also EEOC v. Townley Engineering & Mfg. Co., 859 F.2d 610, 615 (9th Cir. 1988)('burden of attempting an accommodation rests with the employer rather than the employee'). The employer must show that it has taken 'some initial steps to reach a reasonable accommodation of the particular religious belief at issue.' American Postal Workers Union v. Postmaster General, 781 F.2d 772, 776 (9th Cir. 1986); Burns v. Southern Pacific Transp. Co., 589 F.2d 403, 406 (9th Cir. 1978) cert. denied, 439 U.S. 1072, 99 S. Ct. 843, 59 L.Ed.2d 38 (1979). If the employer does not propose an accommodation, the employer must accept the employee's proposal or demonstrate that the proposal would cause undue hardship. [ftnt omitted.] Townley, 859 F.2d at 615.

Hacienda Hotel, 881 F.d at 1512.

Under the circumstances of this case, I am unable to find that a general offer by the County to help plaintiff transfer to another position if one became available constituted a good faith effort to accommodate her in her religious beliefs. According to plaintiff, she informed Barbara Nielsen-the Clerk, about her concerns regarding the registration of domestic partnerships on December 3, 2007. At that time, Nielsen responded that there would be no problem as long as someone else was available to do registrations. The next day, however, Nielsen reversed herself

Page 5 - ORDER

and informed Slater that she would be required to do the registrations. On December 11, 2007, plaintiff submitted a written letter to Nielsen stating that she had "a sincerely held religious belief not to issue domestic partnership licenses or partake in anything related to domestic partnerships." She further requested the County to accommodate her belief by not requiring her to partake in anything related to domestic partnerships.

In response, Nielsen sent plaintiff a memo dated December 14, 2007 in which she wrote that granting plaintiff's request would impose a hardship on the Clerk's Office. She further advised plaintiff that the Director of Human Resources for the County was willing to contact plaintiff about vacancies which might arise in other County departments if plaintiff was interested in a transfer out of the Clerk's Office. Although the County contends that plaintiff "did not follow up" with the Director, plaintiff states that on December 5, 2007(the day after Nielsen had verbally informed her that she would be required to register domestic partnerships), she had contacted an employee in Human Resources about a transfer and was informed that she would have to fill out a new employee application. Thus, it was her understanding that she would not be given any special preference. Nothing in Ms. Nielsen's subsequent memo suggested otherwise. At any rate, no vacancies arose prior to plaintiff's termination on February 6, 2008 after she refused to initial a memo circulated to staff affirming they would perform the duty of processing domestic partnership registrations. After her termination, Slater applied unsuccessfully for four County positions. One of her applications was rejected on the basis of a credit check the County ran on plaintiff (even though she had regularly handled money during her 10 years of employment with the Clerk's Office).

The circumstances here stand in stark contrast to Bhatia v. Chevron, 734 F2d 1382 (9th

Cir. 1984), where a member of the Sikh religion, which proscribes the cutting or shaving of any body hair, wanted to be accommodated by being relieved of any duties that required him to wear a respirator, which would not work on someone with a full beard. Because Chevron required all of its machinists to do field work potentially exposing them to toxic gases and shop work involving other hazardous substances, Chevron denied his request but actively searched for other jobs, offering him three clerical positions which he turned down. I also note that in its interactions with Bhatia, Chevron offered to return him to his machinist position if respiratory equipment were developed that could be used safely with a beard. Finally, Bhatia accepted a janitorial position with the company. It is noteworthy that Chevron's search for other positions continued long after Bhatia was suspended without pay.

Here, no positions were available in the brief period between when Slater requested an accommodation and when she was fired. After she was terminated, the County rejected her application for re-employment. Thus, I am unable to conclude that a relatively vague promise to assist plaintiff to transfer if a position became available during a very short window of time constitutes reasonable accommodation.

Undue Hardship

The County, without exploring any options to accommodate Ms. Slater other than notifying her of vacancies that might become available in other departments, determined that all staff in the Clerk's Office must be available to process domestic partnerships and that anything less would constitute an undue hardship upon the staffing and effective operations of the Office.

The "undue hardship" exception to Title VII has been explained as follows:

> As undue hardship is not defined within the language of Title VII,

> courts have had to determine it on a case-by-case basis. See, e.g., Beadle v. Hillsborough Sheriff's Dep't, 29 F.3d 589, 592 (11th Cir. 1994)(noting that 'undue hardship' is not defined by statute and that the precise reach of the employer's obligation to its employee must be determined on a case-by-case basis).

Berry v. Dep't of Social Services, 447 F.3d 642, 655 (9th Cir. 2006);

As stated in Tooley v. Martin-Marietta Corp., 648 F.2d 1239, 1243 (9th Cir. 1981), cert. denied, 454 U.S. 1098, 102 S.Ct. 671, 70 L. Ed. 2d 639 (1981):

> [u]ndue hardship cannot be supported by merely conceivable or hypothetical hardships ....The magnitude as well as the fact of hardship must be determined by 'actual imposition on co-workers or disruption of the work routine.'

648 F.2d at 1243 quoting Andersen v. Gen. Dynamics Convair Aerospace Div., 589 F.2d 397, 406-07 (9th Cir. 1978);see also, EEOC v. Alamo Rent-A-Car, LLC, 432 F.Supp. 2d 1006, 1016 (D. Ariz 2006)( "hypothetical hardships" based on assumptions or "pure speculation" about accommodations which have never been put into practice are insufficient to show undue hardship.)

Here, no inquiries were made to ascertain the details of plaintiff's accommodation proposal. For example, was Slater willing to take on additional registration duties in marriage licensing in exchange for being relieved of domestic partnership duty. No inquiry was made of Slater's colleagues to ascertain whether they were willing to take up the slack of any accommodation and, no inquiry was made of whether other counties had received accommodation requests for similar reasons and, if so, how they responded. Instead, the County here insisted that all staff must be willing to register domestic partnerships or be terminated for failing to perform a duty of the job.

Page 8 - ORDER

The County's position all but ignores the requirement that there be a case-by-case assessment of the accommodation requested and the hardship presented. For example, in <u>Noesen v. Medical Staffing Networks</u>, 232 Fed Appx. 581 (7th Cir. 2007), a pharmacist who refused on religious grounds to fill prescriptions for birth control was offered the accommodation of being relieved of the obligation to fill birth control prescriptions, taking orders for birth control, and performing checks on birth control orders. His refusal to forward calls from customers seeking birth control prescriptions to other pharmacists, however, was deemed unreasonable and thus an undue hardship on the employer. Here, as noted, the County engaged in no interactive process to determine whether Slater's duty to register domestic partnerships could be effectively handled by other clerks at de minimis cost and inconvenience to the public. <u>See</u> <u>e.g.</u>, <u>Brady v. Dean</u>, 173 Vt. 542, 547 (Vt. 2001) (noting that Vermont's civil union law, which granted same-sex couples civil union licenses, did not burden religious beliefs because the civil union law's provision allowing assistant town clerks to register civil unions offered an "accommodation" for town clerks with religious reservations about issuing a civil union). Certainly the track record of domestic partnership registrations in the aftermath of Slater's termination supports the proposition that the County would not have suffered an <u>undue</u> hardship – Slater was never replaced, and two of her five colleagues processed twenty-six of thirty-seven registrations with the other three dealing with the remaining eleven. And, unlike <u>Noesen</u>, <u>supra</u>, there is nothing in the record to indicate that Slater was unwilling to refer domestic partnership registrants to others in her department. To the contrary, in her declaration plaintiff states that she would have been be willing to refer such registrants, but because of the lack of any interactive process, was never asked.

The Clerk's position that all employees must be willing to process domestic partnership

Page 9 - ORDER

registrations because otherwise co-workers would be burdened when absorbing the additional work is somewhat belied by subsequent events here: as it turned out, 40% of staff processed 70% of the registrations after Slater's departure. The reasons are unknown, but the specific work at issue here was not equally divided. Furthermore, the Ninth Circuit has explicitly held that what constitutes undue hardship must be determined within the factual context of each case and has observed that such must involve more than a de minimis cost to the employer and /or "a significant discriminatory impact" on co-workers. Opuku-Boateng v. State of California, 95 F.3d 1461, 1468, and at fn 12 (1996); Balint v. Carson City, 180 F.3d 1047, 1054 (1999). Moreover, as previously noted, an undue hardship cannot be supported by merely conceivable or hypothetical hardship.

This is not a case where the requested accommodation would expose co-workers to heightened exposure to hazardous duty (Bhatia, supra ). Nor is it a case involving emergency responders such as police officers charged with protecting all members of the public. See, Endes v. Indiana State Police, 349 F.3d 922 (7th Cir. 2003). As important as the work is of a clerk's office, it is not hazardous nor is it emergency response/law enforcement work. Thus, I find those cases distinguishable. If anything, I find Noesen, supra, more analogous, and I note that the employer there did not rest on a "one -size-fits-all" approach but actively engaged in a good faith effort to accommodate the religious beliefs of one of its pharmacists. That did not happen here.

Next, I address the County's position, as articulated in Ms. Nielsens' December 14, 2007 memo to Slater, that accommodating her request would violate the First Amendment in that such accommodation could be construed as supporting one religious belief over another. The County cites to no case law in support of this contention. A public sector employer does not

unconstitutionally "support" an employee's religious beliefs by granting an accommodation to that employee. The Constitution does not mandate that individuals surrender their sincerely held religious beliefs as a condition of public sector employment. Thus the State does not stumble over the First Amendment if it accommodates a Seventh Day Adventist by not scheduling him to work between sundown Friday and sundown Saturday. See, e.g., Opuku-Boateng v. California, supra. Common sense tells us that this would be the case even in the absence of legislation such as Title VII, but certainly so in view of the requirements of title VII and its Oregon state law counterpart.

Moreover, the County is not choosing between Slater's religious beliefs and the beliefs of the domestic partners. For one thing, the County doesn't even know what the religious beliefs are of the latter group (although it is a fair inference that they don't share plaintiff's beliefs). But, more importantly, a domestic partnership registrant has no cognizable right to insist that a specific clerical employee with religious-based objections process the registration as opposed to another employee (having no such objections). So long as the registration is processed in a timely fashion, the registrants have suffered no injury. There is no reason to even inform them of Ms. Slater's religious views or the County's accommodation of those beliefs.

Finally, the County's position that any accommodation that relieves a clerk from any clerical duty constitutes an undue hardship brings to mind a potential scenario. Suppose a deputy clerk has objections on religious grounds to capital punishment and thus asks to be relieved of any duty to file a judgment in a capital case resulting in a death sentence. Suppose further that such cases are relatively rare and that none of the other clerks have such reservations and would be willing to process such judgments. Would the County insist that the clerk with the religious

Page 11 - ORDER

objections agree, as a condition of continued employment, to process a capital punishment judgment notwithstanding the availability of other clerks with no such objections? Would an accommodation to the clerk with religious objections constitute an undue hardship to the County? Does the analysis change with the action that is the subject of the objection, or is anything less than a commitment by each clerk to fulfill every duty of the Clerk's Office an undue hardship to the County no matter how easy it would be to fashion an accommodation?

Because I cannot tell from the record before me whether an accommodation to Ms. Slater would have caused an undue hardship to the County, the County's motion for summary judgment is denied and the County will be required to present their evidence on that issue to a jury.

Plaintiff's Motion for Summary Judgment

Although I agree with plaintiff that the County failed to engage in an interactive process to determine whether a reasonable accommodation could be reached, such does not entitle her to summary judgment. As noted in EEOC v. Townley Eng'g & Mfg. Co., 859 F.2d 610, 615 (9th Cir. 1988): "If an employer can show that no accommodation was possible without undue hardship, it makes no sense to require that he engage in a futile act" [i.e., attempt to negotiate an accommodation.]

As noted above, the record before the court does not lend itself to a resolution of the undue hardship issue in these cross-motions for summary judgment and it would be better to proceed to trial because in the circumstances of this case a fuller record will afford a more substantial basis for decision. See Anderson v. Liberty Lobby, 477 U.S. 242, 245 (1986); Andersson v. Hodel, 899 F.2d 766, 770-771 (9th Cir. 1990).

///

## Conclusion

The parties' cross-motions (#11 and #15) for summary judgment are denied and the matter will be tried to a jury.

DATED this 24th day of September, 2010.

_____
THOMAS M. COFFIN
United States Magistrate Judge